## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MILWAUKEE ELECTRIC TOOL CORPORATION,

     Plaintiff,

v.

A CUSTOM MADE CLOTHING, et al.,

     Defendants.

Civil Action No.
1-25-cv-6945-TWT

### DEFENDANTS' AMENDED MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION CORRECTING ECF No. 20

Defendants Ultra Luck, YL Picks, YayCart, Lunoko, Grabigo, Local Best Goods, HomiYD, YoYodss, Thrivese, ATcuji Direct, Gdreamer, Skyon, azonzpower (collectively, "Defendants"), by and through undersigned counsel, move to dissolve the temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b)(4) and oppose Plaintiff's request for a preliminary injunction pursuant to Rule 65(a). Information of Defendants is attached as Exhibit A. This filing is a corrected version of Defendants' motion previously docketed at ECF No. 20 and is submitted solely to conform to the page-limit and formatting requirements of the Local Rules and to include the required certificates. It adds no new arguments, facts, or evidence. Defendants respectfully state as follows.

## I. INTRODUCTION

Plaintiff commenced this action under seal asserting claims alleging trademark infringements, including allegations of counterfeiting of Plaintiff's trademarks and goods, and sought extraordinary ex parte relief against certain products ("Asserted Infringing Products") sold by multiple foreign online storefronts, including the Defendants. Plaintiff's Complaint is dated December 4, 2025, and the Court entered a Temporary Restraining Order ("TRO") on December 11, 2025, to preserve the status quo pending further proceedings. The Court also set a schedule for briefing and a hearing to determine whether a preliminary injunction should be issued.

Defendants have responded pursuant to the Court's temporary directives regarding notice. Defendants do not challenge the Court's authority to enter temporary emergency relief at the outset to preserve the status quo, and they expressly preserve all defenses, including lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process. The issue now before the Court, at this post-TRO, preliminary-injunction stage, is whether Plaintiff has carried its heightened burden under Rule 65 to convert emergency, ex parte restraints into a longer-lasting preliminary injunction.

Plaintiff has not carried that burden. At the preliminary-injunction stage, the movant bears the burden to make an evidentiary showing as to each defendant establishing (among other requirements) a substantial likelihood of success on the merits and a sufficient basis for continuing extraordinary injunctive relief. See

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

Although Plaintiff submits annotated screenshots of certain product listings, its showing largely consists of visual depictions and conclusory assertions, without a meaningful, element-based explanation applying the governing legal standards to each defendant and the specific features Plaintiff challenges. See ECF Nos. 1-2 through 1-6. Such a presentation is insufficient to justify extending sweeping marketplace disablement and financial restraints against multiple foreign defendants beyond the emergency period, particularly where narrower, conduct-specific measures would preserve the Court's interests while ensuring a meaningful opportunity to be heard. See *HM Florida-ORL, LLC v. Governor of Fla.*, 137 F.4th 1207, 1245 (11th Cir. 2025) (injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

As applied to nine of the Defendants- Ultra Luck, YL Picks, YayCart, Lunoko, Grabigo, Local Best Goods, HomiYD, YoYodss, and Thrivese (the "Group A Defendants")- Plaintiff cannot meet its burden for extraordinary preliminary relief on the present record. Plaintiff alleges in the Complaint that "each of the Defendants has targeted Georgia residents by operating online storefronts that offer shipping to the United States, accept payment in U.S. dollars, and, on information and belief, have sold infringing products to Georgia residents." See ECF No. 1 at pp. 2 - 3. However, sales records of the Group A Defendants tell a different story: seven of the Group A Defendants (YL Picks, YayCart, Lunoko,

Grabigo, Local Best Goods, HomiYD, and YoYodss) have zero sales of the Asserted Infringing Products, and the remaining two (Ultra Luck and Thrivese) have only a single sale each (attached as Exhibit B). These two defendants have provided the waybills showing that the single sales were not shipped to Georgia (attached as Exhibit C).

These facts preclude any defendant-specific showing of a meaningful Georgia-directed forum nexus and, at minimum, undermine Plaintiff's ability to justify the continuation of sweeping, forum-wide injunctive restraints against the Group A Defendants at the preliminary-injunction stage. Although the absence of a forum nexus is a threshold procedural issue rather than a merits determination, it bears directly on Plaintiff's ability to demonstrate a realistic likelihood of obtaining enforceable merits-based relief in this District. See *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985). Defendants intend to separately move to dismiss the claims against the Group A Defendants on Rule 12 grounds, including for lack of personal jurisdiction and insufficient service of process. See Fed. R. Civ. P. 12(b)(2), (5). Where claims are subject to dismissal at the threshold, Plaintiff cannot satisfy its burden to show a substantial likelihood of success on the merits sufficient to warrant extraordinary preliminary injunctive relief. See *Siegel*, 234 F.3d at 1176 (en banc).

The remaining Defendants- ATcuji Direct, Gdreamer, Skyon, and azonzpower- are referred to as the "Group B Defendants." Defendants are foreign

defendants located in China. The manner by which Plaintiff contends it provided notice and service to foreign defendants forms part of the procedural context relevant to the issues presented at the preliminary-injunction stage.

The temporary restraining order directed online marketplaces and payment processors to restrict storefront access and restrain certain funds. To the extent those directives have been implemented, any alleged ongoing activity has been halted pending the scheduled hearing.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's request for a preliminary injunction and dissolve the temporary restraining order. In the alternative, Defendants request that the Court substantially modify any continuing relief to be narrowly tailored and conduct-specific, and to limit any continuing relief pending legally sufficient notice and a meaningful opportunity to be heard.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy. The moving party bears the burden to establish: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without a preliminary injunction; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Siegel*, 234 F.3d at 1176.

## III. ARGUMENT

**A. The Court-Authorized Temporary Notice Provisions Do Not Eliminate Due Process and Hague-Related Concerns When Plaintiff Seeks Longer-Lasting Coercive Relief, and at Minimum Support Narrow Tailoring Pending Reliable Notice**

Defendants have appeared and are responding pursuant to the Court's temporary directives regarding notice. Defendants do not challenge the Court's authority to authorize temporary emergency measures or to permit temporary notice methods in order to preserve the status quo at the outset of a sealed case. But Plaintiff now asks the Court to convert emergency, ex parte restraints into longer-lasting preliminary injunctive relief that continues marketplace disablement and financial restraints. Before extending such coercive equitable relief against foreign defendants, the Court should require Plaintiff to demonstrate that the manner of notice it relies upon is reasonably calculated to reach defendants and is consistent with due process and applicable international service obligations.

Many defendants in this action are located outside the United States, including defendants located in China. China is a party to the Hague Service Convention and has formally objected to the alternative service channels described in Article 10, including service through postal channels. See https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html.

Where the Convention applies, service is generally routed through the

Convention's Central Authority mechanism, absent a legally sound and Convention consistent alternative. See Hague Service Convention arts. 2-7; Fed. R. Civ. P. 4(f)(1). Informal electronic transmission methods such as email are legally contested in this context for China-based defendants. Defendants do not contend that formal service under the Hague Convention must be completed before the Court may conduct a preliminary injunction hearing, nor do Defendants challenge the Court's authority to authorize temporary notice methods at the emergency stage. Rather, the issue at this posture is whether Plaintiff's reliance on contested notice and service mechanisms supports extending extraordinary, coercive restraints such as marketplace disablement and financial freezes against foreign defendants beyond the initial emergency period.

These considerations do not require the Court to revisit the emergency order, but they do weigh strongly against extending sweeping restraints into a preliminary injunction against foreign defendants before Plaintiff demonstrates a legally sound notice and service basis. At minimum, the Court should limit any continuing relief to the narrowest measures necessary pending a clearer showing of effective notice and a meaningful opportunity to be heard, and should decline to continue broad marketplace disablement and financial restraints on a generalized record. See *HM Florida-ORL, LLC*, 137 F.4th at 1245.

**B. Plaintiff Cannot Show a Likelihood of Success on the Merits**

**1. As to the Group A Defendants, Plaintiff Cannot Show a Substantial Likelihood of Success**

**a. As to the Group A Defendants, Plaintiff Cannot Show a Georgia Directed Forum Nexus Sufficient to Justify Extraordinary Injunctive Relief in This District**

(1) Plaintiff seeks sweeping relief against numerous storefronts based on generalized allegations and largely visual materials (including screenshots), without a defendant-by-defendant, element-based explanation showing how each Group A Defendant's particular listing satisfies the legal standards for infringement and extraordinary injunctive relief. That approach is insufficient at the preliminary injunction stage, where the movant must demonstrate entitlement to extraordinary relief as to each defendant against whom the injunction is sought. Because Plaintiff seeks extraordinary injunctive relief in this District, it must also demonstrate that such relief can properly be granted and enforced against each defendant here.

For seven of the Group A Defendants, there are zero sales and for the remaining two, there is one sale each, and neither shipped to Georgia. See Exhibits B and C. On this record, Plaintiff cannot demonstrate a meaningful Georgia-directed nexus sufficient to support ongoing extraordinary injunctive relief against the Group A Defendants in this forum.

(2) Extraordinary injunctive relief should not be extended against foreign defendants in a forum where the plaintiff cannot show Georgia-directed commerce for the particular defendants at issue. See *Walden*, 571 U.S. at 283-84; *Burger King*, 471 U.S. at 472-76. Absent Georgia-directed commerce by Group

A Defendants, Plaintiff cannot satisfy the likelihood-of-success showing necessary to justify continuing broad marketplace disablement and financial restraints against these defendants in this District.

**b. As to the Group A Defendants, Plaintiff Cannot Establish a Likelihood of Confusion Under the Eleventh Circuit's Frehling Factors**

Plaintiff bears the burden of establishing a substantial likelihood of success on the merits as to each defendant. In the Eleventh Circuit, likelihood of confusion is assessed under a multi-factor analysis that considers: (1) the strength of the asserted mark; (2) the similarity of the marks; (3) the similarity of the products; (4) the similarity of the parties' retail outlets and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) the existence of actual confusion. See *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330 (11th Cir. 1999); *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322 (11th Cir. 1989). Considered on the present record, these factors weigh strongly against Plaintiff as to the Group A Defendants.

**(1) Strength of the Asserted Mark**

Plaintiff relies on U.S. Reg. No. 5,085,219 (Int'l Class 16). As reflected in the registration and prosecution history, the asserted mark consists of a composite design incorporating the word "Milwaukee" together with graphic elements. The scope of protection afforded to such a mark is limited to its overall commercial impression, and Plaintiff is not entitled to monopolize individual component

elements divorced from the mark as a whole. See *Frehling*, 192 F.3d 1330 at 1337.

**(2) Similarity of the Marks (Overall Commercial Impression)**

Plaintiff's asserted mark is a composite mark that includes the word "Milwaukee" together with graphic elements. By contrast, the Group A Defendants' accused sticker designs, as shown in Plaintiff's own screenshots, do not include the word "Milwaukee" or any other word mark, and present different overall arrangements and visual presentations of graphic imagery.



.

**Figure 1: Parts of Asserted Infringing Products of Defendants HomiYD and YoYodss, See ECF No. 1-4, at pp. 2 and 333.**

Although both Plaintiff's mark and the accused designs may include lightning-themed imagery, the Eleventh Circuit's analysis focuses on overall commercial impression, not the presence of a shared element viewed in isolation. See *Frehling*, 192 F.3d 1330 at 1337. When viewed in their entireties and in the context in which consumers encounter them, the accused sticker designs do not convey the same source-identifying impression as Plaintiff's asserted mark. This factor weighs against a likelihood of confusion. See *Id*.

**(3) Similarity of the Products**

Plaintiff's registration identifies goods limited to "Felt-tip pens" and "Marking pens" in International Class 16. The Group A Defendants sell decorative stickers, which serve a fundamentally different purpose and are purchased for ornamentation rather than for writing or functional use. Differences in product type, function, and consumer expectations further reduce the likelihood that consumers would believe the products originate from the same source.



**Figure 2: Plaintiff's Trademark Reg. No. 5085219, See ECF No. 1-4, at pp. 2**

**(4) Similarity of Retail Outlets and Customers**

The record does not show that the Group A Defendants target the same customers or market their products in a manner suggesting common source or affiliation with Plaintiff. Decorative stickers and writing instruments are purchased for different reasons, by different consumers, and under different decision-making processes, further undermining any likelihood of confusion.

**(5) Similarity of Advertising Media**

Plaintiff has not presented defendant-specific evidence demonstrating that the Group A Defendants advertise in the same manner, using the same branding strategies, or in a way that would cause consumers to associate the accused sticker designs with Plaintiff's asserted mark.

### (6) Defendant's Intent

There is no evidence in the record that any of the Group A Defendants intended to trade on Plaintiff's goodwill or to pass off their products as originating from Plaintiff. The absence of intent to confuse weighs against a finding of likely confusion under Eleventh Circuit precedent.

### (7) Absence of Actual Confusion

Plaintiff has not submitted any evidence of actual consumer confusion attributable to the Group A Defendants. While not required, the absence of actual confusion particularly at the preliminary-injunction stage further undermines Plaintiff's likelihood of success showing.

### (8) Non-Trademark

Finally, Plaintiff's screenshots depict the challenged designs as ornamental elements of the stickers themselves, rather than as indicators of source. To prevail on the merits, Plaintiff must show that the accused matter functions as a trademark in the minds of consumers. On this record, Plaintiff has not made such a showing as to the Group A Defendants.



**Figure 3: Asserted Infringing Products of Defendants HomiYD, See ECF No.1-4, at pp. 2.**

Taken together, the Eleventh Circuit factors weigh strongly against a finding of likely confusion. Plaintiff has therefore failed to make the defendant-specific showing required to establish a substantial likelihood of success on the merits as to the Group A Defendants, and extraordinary preliminary injunctive relief is unwarranted.

**2. As to the Group B Defendants, Plaintiff Fails to Show a Substantial Likelihood of Success**

**a. Because the Challenged Use Is Non-Trademark, Functional, and Industry Common, and Because Plaintiff Bears a Heightened Burden Where the Asserted Rights Are Limited**

Plaintiff relies on U.S. Reg. No. 5,645,535 (Serial No. 87418780) and US. Reg. No. 5,645,537 (Serial No. 87418807) (Int'l Class 9).

Even assuming Plaintiff can identify particular product images or listings associated with the Group B Defendants, Plaintiff fails to meet its burden to show

a substantial likelihood of success on infringement.

**(1) Any Depicted Design Element Is Used Descriptively and Not as a Source Identifying Mark**

Trademark law protects source identifying use. Where a defendant's use of a depicted feature is merely descriptive of a product's appearance or function, and not used to identify source, it is not a trademark use. Here, the challenged depiction is best understood as a description of product design and functional features rather than a source identifier. This is especially so where the challenged element appears as part of a functional area of the product rather than as a standalone brand indicator. Plaintiff's generalized showing is insufficient to establish that any Group B Storefront used the element in a manner that functions as a mark.

**(2) The Asserted Feature Is Functional and Therefore Not Protectable Under Trademark Law**

Plaintiff's theory appears to target a design feature that corresponds to a product structure component used for securing, operating, or fitting a tool-related product. In the office actions issued to both U.S. Reg. No. 5,645,535 (Serial No. 87418780) and U.S. Reg. No. 5,645,537 (Serial No. 87418807) on August 25, 2017, USPTO pointed out that these trademarks include functional features, such as the button and tab on the side of a battery (Attached as Exhibits D and E, at pp. 4). Trademark law does not confer exclusive rights over functional product

features. Where a design is essential to use or purpose, or affects cost or quality, it is functional and cannot be monopolized through trademark. See *TrafFix Devices, Inc. v. Mktg. Displays*, Inc., 532 U.S. 23, 32 (2001).

Consistent with these principles, courts have recognized that functional product design features are not protectable as trade dress. In addition, where Plaintiff proceeds under a trade dress or product-design theory, Plaintiff bears the burden to prove non-functionality. See 15 U.S.C. § 1125(a)(3). Plaintiff has not made that showing here.

**(3) The Red-and-Black Color Scheme Is a Common Industry Convention and Cannot Support Plaintiff's Likelihood-of-Success Showing**

Even if Plaintiff frames the dispute as involving overall color placement or contrast, red-and-black color schemes are widely used in tool and tool-accessory markets for conventional reasons, including highlighting operation areas, warning or emphasis, and aesthetics. In the office actions issued to both U.S. Reg. No. 5,645,535 (Serial No. 87418780) and U.S. Reg. No. 5,645,537 (Serial No. 87418807) on August 25, 2017, the USPTO cited various tools with red-and-black color. See Exhibits D and E at pp. 19-21. Industry-common elements do not, without more, establish distinctive source identification. Plaintiff's generalized allegations do not supply the defendant-specific evidence needed to show that consumers view the color placement as uniquely signifying Plaintiff, rather than as a conventional design choice in the industry.

**(4) Limited Evidentiary Effect of a Supplemental Register Registration Further Undermines Plaintiff's Likelihood of Success**

To obtain a preliminary injunction, Plaintiff must do more than point to superficial similarity. Where the asserted rights are limited in scope or depend on acquired meaning, Plaintiff must come forward with stronger proof that consumers perceive the challenged feature as a source identifier and are likely to be confused. That requirement is particularly important where, as here, Plaintiff relies on registrations on the Supplemental Register to support the extraordinary relief it seeks.



**Figure 4 and Figure 5: Trademark Information of U.S. Reg. No. 5,645,535 (Serial No. 87418780) and U.S. Reg. No. 5,645,537 (Serial No. 87418807) showing that their Registration Types are Supplemental**

A Supplemental Register registration does not carry the statutory presumptions associated with a Principal Register registration. See 15 U.S.C. § 1094. Accordingly, Plaintiff cannot satisfy its burden at the preliminary-injunction stage by pointing to a limited registration alone, and must instead

present a stronger, record-based showing on protectability and likelihood of confusion.

The USPTO prosecution history for the asserted color or configuration mark underscores why Plaintiff cannot rely on a limited registration label to carry its Rule 65 burden. In office actions issued on September 13, 2018, the USPTO refused registration because the color marks were not inherently distinctive and were registrable only on the Supplemental Register or on the Principal Register upon a substantial showing of acquired distinctiveness under Section 2(f). (Attached as Exhibits F and G, at pp. 1-3).

The USPTO further noted the absence of "look for" type promotion or other direct evidence showing that consumers perceive the claimed red feature as a source identifier, and separately raised concerns that the claim overlapped with functional product features such as battery release mechanisms. See Exhibits F and G at pp. 3; Exhibits D and E at pp. 4.

The Lanham Act draws an explicit distinction between the Principal and Supplemental Registers with respect to evidentiary presumptions. Registrations on the Principal Register constitute prima facie evidence of validity, ownership, and exclusive right to use, see 15 U.S.C. § § 1057(b), 1115(a), whereas registrations on the Supplemental Register "shall not be subject to or receive the advantages" of those provisions. 15 U.S.C. § 1094. The Supreme Court has likewise recognized that, while a Principal Register owner enjoys "valuable benefits," the Supplemental Register accords only "more modest benefits."

*USPTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2302 (2020) (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297-98 (2019)).

That distinction is particularly significant where the claimed subject matter is a color or product-configuration feature. Colors are not inherently distinctive, and protection depends on proof of acquired distinctiveness or secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211-12 (2000).

Consistent with these principles, courts have denied preliminary injunctive relief where plaintiffs relied on Supplemental Register registrations without sufficient proof of secondary meaning. See *Butler v. Hotel California, Inc.*, No. 4:14-cv-02380-JRA, slip op. at 5-6 (N.D. Ohio Mar. 30, 2015); *Schoene v. Christensen*, No. 3:23-cv-00693-AN, slip op. at 3-5 (D. Or. Aug. 10, 2023).

Those principles apply with particular force here. Plaintiff seeks extraordinary, coercive relief against the Group B Defendants at the preliminary-injunction stage, yet relies on registrations that lack statutory presumptions and are coupled with a prosecution history identifying non-distinctiveness, lack of consumer-perception evidence, and potential functionality. On the present record, Plaintiff has not carried its heightened burden to demonstrate a substantial likelihood of success on the merits sufficient to justify preliminary injunctive relief.

**(5) The Extraordinary Remedies Sought Are Not Narrowly Tailored to Any Proven Infringement**

18

Even if Plaintiff could identify some arguable similarity in isolated images, the relief sought is far broader than necessary. Marketplace-wide disablement and asset restraints are extraordinary. Plaintiff must show why less restrictive measures would be inadequate, such as limiting relief to specific listings or requiring clear disclaimers of non-affiliation and compatibility, rather than shutting down storefronts or freezing funds.

On this record, Plaintiff has not shown that a narrow, conduct-specific remedy would be insufficient. The Court should deny a preliminary injunction or, at minimum, limit any continuing relief to the narrowest measures necessary. See Fed. R. Civ. P. 65(d)(1); *HM Florida-ORL, LLC*, 137 F.4th at 1245.

### C. Plaintiff Is Not Likely to Suffer Irreparable Harm

Plaintiff bears the burden of demonstrating irreparable injury warranting extraordinary preliminary relief. A showing of irreparable injury is "the sine qua non of injunctive relief." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)); see also *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) (en banc). The absence of a substantial likelihood of irreparable injury, standing alone, makes preliminary injunctive relief improper. *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990).

Plaintiff cannot satisfy this burden. Plaintiff relies solely on conclusory assertions of "consumer confusion" and generalized claims of loss of control over brand perception. Plaintiff submits no evidence of lost customers, diminished revenues, or other concrete marketplace harm, and does not explain how or when the alleged harm will occur absent an injunction.

Plaintiff's showing is further weakened with respect to the Group B Defendants by the nature of the rights it asserts. Plaintiff's asserted marks appear on the Supplemental Register, not the Principal Register, which significantly weakens any claim of irreparable harm.

Plaintiff's own evidentiary screenshots display a notation such as "14 sold" for Group B Defendants. As shown on the face of the screenshots, this figure reflects the cumulative number of units sold as of the moment the screenshot was captured. Using Plaintiff's displayed "sold" count as an anchor, Defendants can approximate the screenshot's capture time as the interval after the Nth unit was sold but before the (N+1)th unit was sold. Three of the Group B Defendants have provided sales-timing information identifying when the Nth and (N+1)th unit were sold (attached as Exhibit H, which also includes the screenshots excerpted from Plaintiff's exhibits).

Applying that same method here, Defendants estimate that Plaintiff's screenshots were captured months before this action was filed, within approximately the following windows:

ATcuji Direct: Plaintiff's screenshot shows "14 sold" - captured between the 14th and 15th units sold, approximately April 14-April 24, 2025. See ECF No. 1-5 at pp. 4 and Exhibit H.

Gdreamer: Plaintiff's screenshot shows "212 sold" - captured between the 212th and 213th units sold, approximately April 7-April 8, 2025. See ECF No. 1-5 at pp. 155 and Exhibit H.

azonzpower: Plaintiff's screenshot shows "20 sold" - captured between the 20th and 21st units sold, approximately April 29-April 30, 2025. See ECF No. 1-5 at pp. 8 and Exhibit H.

Yet Plaintiff did not commence this action until December 2025. Plaintiff's months-long delay - particularly where the asserted need for emergency relief is premised on alleged ongoing marketplace harm - at minimum, weighs strongly against extending sweeping marketplace disablement and financial restraints as preliminary injunctive relief and supports dissolution, or substantial narrowing, of any continuing restraints as to the Group B Defendants.

Because irreparable harm is an independent and indispensable requirement, Plaintiff's failure to satisfy this element alone requires denial of the preliminary injunction, regardless of the remaining factors. *Snook v. Trust Co. of Georgia Bank of Savannah*, N.A., 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury).

**D. The Balance of Hardships/Equities Weighs Heavily Against the Plaintiff**

A preliminary injunction is an "extraordinary remedy," and the movant must establish that the balance of equities tips in its favor. The Court must balance the claims of injury and consider the effects on each party from granting or withholding relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

Plaintiff has offered no meaningful evidence that it will suffer imminent, non-compensable harm absent an injunction. Plaintiff has not produced consumer complaints, corroborated lost-sales figures, or other proof demonstrating that the alleged use has inflicted or is imminently inflicting irreparable injury to its goodwill.

**1. Plaintiff's Alleged Harm Is Minimal, Speculative, and Compensable**

As to the Group B Defendants, Plaintiff relies on marks registered on the Supplemental Register, not the Principal Register. The weaker legal rights associated with those marks substantially limit any commercial impact or market value, indicating that any claimed harm is speculative and readily compensable.

As to the Group A Defendants, seven storefronts have zero sales, and the remaining two each had only one sale, neither shipped to Georgia. Plaintiff therefore cannot show meaningful commercial activity or cognizable damage in this forum.

Taken together, Plaintiff's alleged harm is minimal, speculative, and

compensable, and cannot outweigh the substantial harm that the requested injunction would impose on Defendants.

## 2. Defendants Will Suffer Immediate, Concrete, and Irreparable Harm

The proposed injunction would immediately disrupt Defendants' normal business operations, strand inventory, and threaten the livelihoods of small sellers. These tangible and immediate harms far exceed Plaintiff's speculative claims and strongly favor Defendants in the equities analysis.

In addition, Plaintiff has presented no credible evidence of intentional or willful deception by Defendants, further undermining any justification for extraordinary, sweeping relief.

Accordingly, the balance of hardships weighs heavily against Plaintiff, and the Court should deny Plaintiff's request for a preliminary injunction and dissolve, or substantially narrow, the existing temporary restraining order.

### E. An Injunction Disfavors the Public's Best Interest

Equitable relief is appropriate only where "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The asserted public interest in avoiding consumer confusion is speculative, as it is premised on unproven trademark rights and cannot support a broad injunction. Moreover, the Court must consider the impact on consumers, customers, employees, and other market participants. Shutting down or materially impairing Defendants' functioning business imposes real

public costs that far outweigh any speculative public benefit.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's request for a preliminary injunction and dissolve or substantially modify the temporary restraining order. In the alternative, Defendants request that any continuing relief be narrowly tailored, conduct-specific, and limited pending legally sufficient notice and a meaningful opportunity to be heard. As to the Group A Defendants, Defendants further request that the Court decline to extend extraordinary injunctive relief in this forum in the absence of a sufficient Georgia-directed nexus.

Date: January 20, 2026                           Respectfully submitted,

*/s/ Chengchen Xu*
Chengchen Xu
Attorney for Defendants
NY Attorney Registration # 6277362
418 Broadway #8555
Albany, NY, 12207
Phone: 858-280-5570
Email: cc.xu.iplaw@hotmail.com

/s/ Abena K. Abayomi-Rogers, Esq.
Abena K. Abayomi-Rogers, Esq.
Georgia Bar No. 315161
Attorney for Defendants
ICEE Law, LLC
Address: 1445 Woodmont Ln, NW
Suite 3362
Atlanta, GA 30318
Telephone: (470) 574-0529
Email: CourtComms@ICEELaw.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief has been prepared in a font and point size permitted by L.R. 5.1(B) and otherwise complies with the formatting requirements of L.R. 5.1(C).

*/s/ Chengchen Xu*
Chengchen Xu

/s/ Abena K. Abayomi-Rogers, Esq.
Abena K. Abayomi-Rogers, Esq.
Georgia Bar No. 315161
Attorney for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 20, 2026, a true and correct copy of the foregoing document was served on counsel of record in accordance with the Federal Rules of Civil Procedure and the ECF System of this Court.

*/s/ Chengchen Xu*
Chengchen Xu
Attorney for Defendants

/s/ Abena K. Abayomi-Rogers, Esq.
Abena K. Abayomi-Rogers, Esq.
Georgia Bar No. 315161
Attorney for Defendants